IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robbie Collins, # 290946, ) | C/A No.: 2:13-2700-RMG-WWD |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| ) | |
| David M. McCall, Warden; ) | |
| James Dean, A/W; ) | |
| A/W Nolan; ) | |
| Deputy Warden Willie Davis; and ) | |
| Ann Hallman, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a state prisoner proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the Defendants' summary judgment motion under FED.R.CIV.P. 56. 28 U.S.C. § 636(b)(1), and Local Rule 73.02(B)(2)(d), D.S.C.

The Plaintiff, Robbie Collins, #290946, brought this action on October 3, 2013, against David M. McCall, the Warden of Lee Correctional Institution ("LCI") in

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983.

1

Bishopville, South Carolina, a facility of the South Carolina Department of Corrections ("SCDC"), James Dean, Assistant Warden at LCI, A. W. Nolan, also Assistant Warden at LCI, Willie Davis, Deputy Warden at LCI, and Ann Hallman, Grievance Director at the SCDC, all of whom are employed by the SCDC. (Dkt. 1)

The Plaintiff made two claims: first he claimed he had not received outside recreation/exercise for over a year which caused him to have painful leg and hip pains, as well as chronic breathing problems. He seeks damages[2] for this conditions of confinement claim. Second, Plaintiff challenged the change to procedures inmates must follow in order to grieve their complaints at the SCDC. Plaintiff seeks injunctive relief, "to change the Grievance Policy back to what it was before the change." Id.

All Defendants answered the complaint on February 28, 2014, and raised various defenses including the Plaintiff's alleged failure to exhaust his administrative remedies in violation of the Prison Litigation Reform Act's ("PLRA") exhaustion requirement, 42 U.S.C. 1997e(a) prior to bringing suit. (Dkt 24, §§ 19, 20). The matter

---

[2] To the extent the Plaintiff brings this suit against the Defendants in their official capacities under § 1983, the Defendants are entitled to immunity pursuant to the Eleventh Amendment in their official capacities from the Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. See, e.g., Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam) (citations omitted); Hans v. Louisiana, 134 U.S. 1, 10–11, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Furthermore, Eleventh Amendment immunity "extends to 'arm [s] of the State,' including state agencies and state officers acting in their official capacity," Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office ... [and] is no different from a suit against the State itself," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. Id. As a result, to the extent the Plaintiff has alleged claims for monetary damages against the Defendants in their official capacities under § 1983, those claims must be dismissed because the Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.
   The Plaintiff can seek damages against the Defendants personally as permitted by Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

was reassigned to the undersigned on June 5, 2014. On June 16, 2014, the Defendants filed a motion for summary judgment along with the affidavit of Defendant Warden McCall, the Special Management Unit's ("SMU") Operations Policy, and the SCDC Grievance Policy.

On June 20, 2014, the Plaintiff was provided an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) advising him of the importance of such motions and of the need for him to file an adequate response. He moved for an extension of time to oppose the motion, which motion was granted on July 24, 2014. The Plaintiff filed a memorandum in opposition to the motion on July 29, 2014, with exhibits, including copies of his grievances and responses thereto, copies of his medical records showing he has a history of sinus problems with bleeding and that he has complained of pains in his leg and hip, particularly at the site of an injury from a motor vehicle accident, which accident required the surgical placement of a metal rod in his leg.

The Plaintiff served interrogatories and requests for production of documents on the Defendants. The Defendants answered most questions and objected to providing the Plaintiff with the number of staff required to afford inmates in segregation outdoor exercise. They also produced the prison's policy regarding exercise for inmates in segregation, and the "Physical Fitness, An In-Cell Exercise Program" instructions.

The Plaintiff moved to compel answers to specific staffing questions which motions were denied on September 29, 2014. (Dkt. 54). Also on September 29, 2014, the undersigned ordered that the parties file additional evidence on the issue of whether the Plaintiff had properly exhausted his available administrative remedies. (Dkt. 54). The parties have responded to the order. (Dkt. 56, 57). The Plaintiff also sought denial

of the summary judgment motion based on the lack of complete answers to discovery. (Dkt. 44).  Hence it appears that the motions are ripe for consideration.

## Legal Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. See  Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); see also  Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is a genuine material issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir.1990).  Nor can the court assume the existence of a genuine issue of material fact where none exists. FED.R.CIV.P. 56(c).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). See also  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir.1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  If the movant carries its burden of showing there is an absence of evidence to support a claim, then the Plaintiff must

demonstrate by affidavits,[3] depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Id. at 324–25.

An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the Plaintiff. Anderson, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. Id. A complete failure of proof concerning an essential element of the Plaintiff's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. Anderson, 477 U.S. at 251.

Prison Litigation Reform Act ("PLRA") and the Exhaustion of Administrative Remedies

The court will first consider the Defendants' claim that they are entitled to dismissal of the Plaintiff's claims because the Plaintiff failed to exhaust his administrative remedies prior to initiating litigation as required by 42 U.S.C. § 1997e(a). (Dkt 24, §§ 19, 20) The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The PLRA requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997e(a). The Supreme Court held that the

---

[3] Plaintiff's complaint is verified and based upon his personal knowledge. In this circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991). Therefore, the court construes all material factual disputes in favor of the Plaintiff as the non-moving party. A verified complaint based upon personal knowledge, standing alone, may defeat a motion for summary judgment. Id.

PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

An inmate's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the Defendant. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir .2005); see also Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).  Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's own grievance procedures to exhaust his administrative remedies. Jones, 549 U.S. at 218.

As the United States Supreme Court has emphasized, however, an inmate can only exhaust those administrative remedies that are available to the inmate. Woodford v. Ngo, 548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions ... until such administrative remedies *as are available* are exhausted." (emphasis added)).

Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he or she completes Step 2 of the SCDC grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. See, e.g., Ayre v. Currie, Case No. 05–CV–3410, 2007 WL 3232177, at 7 n. 5 (D.S.C. Oct. 31, 2007); Charles v. Ozmint, Case No. 05–CV–2187, 2006 WL 1341267, at 4 (D.S.C. May 15, 2006).

A review of the records and relevant case law reveals that the Plaintiff filed this

6

action on October 3, 2013, prior to receiving a final decision of his Step 2 grievance on November 8, 2013, on his claim (LCI-14-54-13) that the grievance policy should be changed. The Plaintiff did not wait until he exhausted his administrative remedies as required by 42 U.S.C.A. § 1997e(a). Therefore that claim should be dismissed without prejudice. Furthermore, the Grievance Coordinator, Defendant Ann Hallman should be dismissed from the action as this claim was directed at her, and she does not appear to be involved in the other claim.

On the other hand, the Plaintiff's grievance that he has had no outdoor recreation/exercise in over a year (LCI-2195-13), is technically unexhausted because his Step 2 appeal was received on September 13, 2013, and is still pending over one (1) year later as of September 29, 2014. Several circuits have held a grievance may be considered exhausted under the PLRA when a prisoner files a grievance but has not received a timely determination. See, e.g., McMichael v. Pate, 2014 WL 793070, 8 (D.S.C. 2014), citing, Boyd v. Corr. Corp. of Am., 380 F.3d 989, 996 (6th Cir. 2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable... ."); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); and Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

7

In the instant case, the Plaintiff's Step 2 grievance has been pending over a year. Defendants have not asserted that an extension was granted with respect to Plaintiff's grievance or that some other timeliness exception applies. At this stage of the litigation, the court has taken judicial notice of the SCDC grievance process, which states a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance, and Plaintiff alleges the policy states a responsible official will respond within ninety (90) days. Under either time limit, SCDC's administrative remedy was unavailable within the meaning of the PLRA because Plaintiff's grievance was not timely processed. Accordingly, the Court will consider the merits of Plaintiff's claim that he was denied out-of-cell recreation/exercise for more than a year.

## The Parties' Version of the Facts

In his verified complaint, the Plaintiff wrote verbatim:

> On June 13, 2013, I wrote the Defendants that I had not been given the opportunity of Outside Recreation in over a year. I wrote each Defendant a Staff Request explaining that I have not been given outside Recreation. I further explained that it was not due to disciplinary problems why I was not getting Outside Recreation but due to Staff not doing there Job. I explained that my 8th Amendment was being violated But the Defendants Refused to answer any of My Request. Nor Rectify the problem. Petitioner has been going to Medical about leg pains due to not being able to have Outside Recreation to fully exercise his previous injury leg.

(Dkt. 1)

The Petitioner appended copies of his attempted grievances to his complaint. In Grievance No. LeeCI 1932-13 he wrote verbatim:

> I wrote Warden McCall, Associate Warden Dean, and Deputy Warden Davis about me not receiving Outside Recreation. I haven't had Outside Recreation in over a year they simply Refuse to answer My Request nor Rectify this Problem. I explained that it is cruel and Unusual Punishment to straight deny Me Recreation (outside) for no apparent Reason.

8

The Grievance was returned unprocessed to the Plaintiff. On July 9, 2013, L. Johnson wrote, "I suggest that you submit a Request to Staff to D/W Davis to address your concerns due to the fact SMU falls under his area of supervision. This grievance is being returned to you with no action taken."

In a "Staff Request" dated July 7, 2013, the Plaintiff wrote verbatim:

I haven't had Outside Recreation in over a year and My Sinuses is Being effected by this I have sores in My Nose and My Sinus constantly draining out My Nose and in the back of My throat. The Deep Sea Premium Saline Nasal Spray doesn't work. My Nasal Cavity is far from dry. I can run through a Roll of tissue in 3 days no exaggeration. The CTC pills work but its only temporary. I need fresh air. I have splotches on my skin due to lack of Sunlight. Every time I talk to one of those old retired Feeble Mind Doctors they don't help. I tel the Man My Nose won't stop running and it's Draining in the Back of My Throat, he gives Me a Nasal Spray for A Dry Nasal Cavity. I tell him I can't hear out My left Ear and it Constantly Hurts he prescribes Me the exact Same Medication (Ear Drops) that I have had several times that don't work and Makes My Ear Burn and Throb More. ....

Next, the Plaintiff submitted his written request to Deputy Warden Davis dated August 11, 2013, and asked, "What's up with Outside Recreation. I haven't had any in over a year. Also I need some Fresh Air My Body Beginning to Ache and I got sores in My Nose from lack of Fresh Air." The response two days later to the Plaintiff was, "Lack of Officers." The response appears to be signed by "Mrs. A. Smith".

In addition, the affidavit of Warden McCall executed on June 9, 2014, was filed in support of the Defendants' summary judgment motion. He averred:

APPEARED before me, the undersigned authority for administering oaths, David Michael McCall, who upon being duly sworn, swears and states as follows:

l. My name is David Michael McCall and I have been employed with the South Carolina Department of Corrections for over 27 years. I have been assigned to the Lee Correctional Institution ("LCI") as Warden from April 17, 2012 until October 1, 2013. I was so employed at all times pertinent to the Plaintiff's Complaint.

9

2. As Warden over LCI I am was in charge of overseeing and monitoring the everyday operations of this institution and I am very familiar with the policies and procedures implemented to maintain security in the unit as well as the day-to-day functioning of the facility.

3. SCDC policy specifically provides for exercise time for inmates housed in the SMU. See Attached SCDC Policy/Procedure OP-22.12, Section 18.1. Exercise periods outside the cells shall be available five (5) days per week, one (1) hour per day, weather permitting or unless safety and security reasons dictate otherwise.

4. Furthermore, safety and security concerns are also factors which dictate an SMU inmate getting out-of-cell exercise time, weather permitting. Adequate staff is required for out-of-cell exercise to maintain security and institutional control. If adequate staff is not available to maintain security and institutional control, out-of-cell recreation time for SMU inmates will be cancelled for the day. Cancellation of out-of-cell recreation time is necessary so that SMU can meet its penological objective of controlling the inmates and maintaining strict order.

5. Outdoor recreation is not the only recreation or exercise opportunities that an SMU inmate has. When in their individual cells, SMU inmates are not restrained and have sufficient room to exercise. Inmates are encouraged to exercise using sit-ups, push-ups and other calisthenics. The inmates are provided instructions for in-cell exercise. <u>See</u> **Attachment A** to Section 18.4 titled "Physical Fitness, An In-Cell Exercise Program".  Therefore, the cancellation of out-of-cell exercise for the day does not prevent SMU inmates from receiving sufficient exercise.

6. Inmates are never prohibited from exercising in their individual cells.

7. I have violated no constitutional or statutory rights belonging to the Plaintiff nor do I know of any other SCDC employee violating Plaintiff's constitutional or statutory rights.

The foregoing is a true and accurate portrayal of my knowledge and involvement regarding this matter.

(Errors and emphasis in the original).

The Defendants also filed the SCDC Policy/Procedure OP-22.12, Section 18.1[4]

---

[4] The policy is signed by the then Director of SCDC, William R. Bryars, Jr. who retired on September 30, 2013, and was replaced by the current Director, Bryan P. Sterling.

to which Defendant McCall referred in his affidavit.  It reads:

>**18**. RECREATION PRIVILEGES:
>
>**18.1** Exercise periods outside the cells shall be available five (5) days per week, one (l) hour per day, weather permitting or unless safety and security reasons dictate otherwise. All inmates scheduled for exercise will be strip searched prior to being removed from their cell and at the conclusion of exercise. (4-4255, 4-4270, 4-4273)
>
>**18.2** Level I inmates will be exercised individually or with one (l) other Level l inmate with the approval of the unit supervisor or other higher authority. Level I inmates will be required to wear restraints while exercising, except that Level I inmates who are housed in SMUs that have secured individualized exercise areas may have their restraints removed once they are secured within the individualized exercise area. (Only one [l] inmate at a time may be exercised in these areas without restraints.) The Warden will determine if the inmate can be exercised without restraints. The inmate will be properly restrained prior to exiting the secured individualized exercise area.
>
>**18.3** Level II inmates will be exercised individually or in groups with the approval of the unit supervisor or higher authority. Inmates will be escorted to and from the exercise yard in, at a minimum, security cuffs. Restraints will be removed once the inmate is securely inside the exercise yard and once s/he is returned to his/her cell. (4-4273)
>
>**18.4** Disruptive behavior during out-of-cell exercise will result in suspension of this privilege for the remainder of that exercise period and for the next scheduled exercise period. Documentation will be done as stated in Section 7.4. If an inmate's behavior creates a serious threat to his/her own safety and security or the safety and security of others, the inmate's exercise privileges may be suspended for no longer than 7 days at a time. In such cases, the unit supervisor will ensure that the inmate has a copy of Attachment A, "Physical Fitness, An In-Cell Exercise Program." Any inmate who does not stand for a formal count will automatically forfeit his/her next regularly scheduled recreation period.(4-4273)
>
>**NOTE**: An officer may recommend that an inmate's exercise be suspended; however, a Lieutenant or higher must approve the suspension and place his/her initials next to the remarks on the form. Disciplinary action may be taken against an inmate in these cases as well.

Other materials are part of the instant record.  The Plaintiff served interrogatories

on Defendant Willie Davis and asked, "How many times has recreation been given to the prisoners from 2013 to present?" Davis answered, "Recreation has been afforded approximately three (3) times since 2013 to inmates in administrative detention." The next question was, "Were you aware that recreation was not being done on lock-up?" Davis answered, "Defendant Davis is fully aware that recreation is not being conducted on a regular basis in SMU, or administrative detention." When asked, "What measures were taken to ensure that recreation was being afforded to the prisoners on SMU?" Davis answered, "Defendant Davis has provided every inmate in administrative detention with an in-cell recreation form. This allows the inmate to exercise in their cells in order to relieve stress."

In addition, the Plaintiff asked, "Were you aware that prisoners on lock up are to have at least one hour of outside recreation?" Davis answered, "Inmates in administrative detention are permitted to have recreation for a period of one (1) hour on lock-up, five (5) days a week. Lee Correctional Institution has been understaffed for approximately the last two years. When security permits, recreation is conducted. Safety of the staff, contractors and inmates is always top priority." Davis also stated that the only areas inmates in segregation can use for exercise is the outside recreation yard and their cell. (Dkt. No 50-1, pg. 12)

Similar interrogatories were answered by Warden Davis. He wrote that he was aware that the Plaintiff was not receiving recreation. Id.

Likewise, when Warden McCall responded to the Plaintiff's Step 2 Grievance 2195-13, he wrote:

Inmate Collins, This is in response to grievance #2195-13.

> I have reviewed your grievance and the facts. It is noted that due to staffing and security issues, outside recreation is not being conducted 5 days per week in SMU as required in policy. While this issue is regrettable, due to security issues at present time, it is unavoidable. Every effort is being made to resolve this issue as soon as possible.
>
> Please note that Security is our number one priority here at Lee C.I. and whatever measures are needed to maintain a safe and secure environment will be enforced. D/W Davis was contacted and I was advised that you were provided with a cell physical fitness sheet, that advises you of in-cell exercises that you may conduct in the event that outside recreation is not afforded. Please note that Deputy Warden Davis oversees the day-to-day operations in SMU and is reviewing all schedules/procedures for normal daily/weekly/etc operations. His supervision will assist when issues such as yours are alleged as they can be researched and addressed in a timely manner and any necessary changes/modifications can be made. Based on this information, I see no further action warranted on this issue
>
> If you are not satisfied with my decision, you may appeal to the appropriate responsible official within (5) days of receipt, via the Institutional Grievance Coordinator ..

(Dkt. No. 50 pg. 16)

It appears that a reasonable jury could conclude that Defendants Nolan and Dean knew SMU inmates were not being allowed out of cell exercise/recreation. The Plaintiff asked Davis, "Was the reason outside recreation was not being done due to shortage of staff?" Davis answered, "Yes." Then, "Have you ever notified Warden McCall of the shortage of staff? (if any)." Davis again answered in the affirmative. The Plaintiff asked Davis the same question about notifying Associate Warden Nolan and Associate Warden Dean about the staff shortage and again Davis answered that he had notified Nolan and Dean of the staff shortage also. In fact, Davis indicated that he had notified "every appropriate person." The questions and answers continued verbatim as follows:

10. Are there steps you can take when you have a serious issue such as shortage of security and the Warden ignores request?

RESPONSE: The Warden has never ignored my request. We came to a decision to allot overtime for SMU, but with anything, you cannot make people come work overtime hours.

11. Are the prisoners' rights apart of your decision making process dealing with the daily upkeep of your area?

RESPONSE: Yes, it is. I always believe in giving the inmates on lock-up everything that OP 22.12 says that they are supposed to have.

12. Has Warden McCall ever ignored your request to help dissolve the problem of staff at SMU?

RESPONSE: No, he has not.

13. Has Associate Warden Nolan ever ignored your request to help dissolve [sic] the problem of staff of SMU?

RESPONSE: No, he has not.

14. Did you permit prisoners one day of recreation between July-December 2013 and had an officer film/take pictures of the prisoners on the recreation field?

RESPONSE: It was a day that we had enough staff to conduct recreation and I personally took a picture on my State phone. See attached pictures labeled P1-P16.

15. How many officers were working on that day? And what day, month, and year was that?

RESPONSE: I cannot recall the date and time, but at least 15 officers were working on that day.

(Dkt No. 40-1, pgs. 5-7).

### Eighth Amendment Conditions of Confinement Standards

Prison conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment under the Eighth

Amendment of the United States Constitution. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).  Conditions which are merely restrictive or even harsh, however, "are part of the penalty that criminal offenders pay for their offenses against society." Id.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, a two prong test must be met: the Plaintiff must be able to show that (1) there was a serious deprivation of a basic human need, and (2) that prison officials were deliberately indifferent to the prison condition. See  Wilson v. Seiter, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); Shakka v. Smith, 71 F.3d 162, 165 (4th Cir.1995).

Under the first prong, the Plaintiff must establish that the prison condition was a "sufficiently serious" deprivation of a basic human need. Farmer v. Brennan, 511 U.S. 825, 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson, 501 U.S. at 298). Lack of exercise is the deprivation of a single identifiable human need.  Wilson, 501 U.S at 304, 305,  citing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day) with Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours a day).

The Fourth Circuit has held that "complete deprivation of exercise for an extended period of time violates Eighth Amendment prohibitions against cruel and unusual punishment." Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992).  Nevertheless, whether the denial of outdoor exercise constitutes a constitutional violation depends on

"the totality of the circumstances." Id. "[I]n considering the totality of conditions pertinent to the right of exercise at a given institution, elements including the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, ... and the practical opportunities for the institution to provide prisoners with increased exercise opportunities must be considered." Id. (quoting Dawson v. Kendrick, 527 F.Supp. 1252, 1300 (S.D.W.Va. 1981)).

Furthermore, as previously noted, the Fourth Circuit has also held that to state an Eighth Amendment claim based on conditions of confinement, a Plaintiff must allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381.

The second prong involves a subjective analysis requiring the Plaintiff to establish that a Defendant had a "sufficiently culpable" state of mind. Id. The Supreme Court has defined this state of mind requirement to mean deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303-304 (1981). In essence, a Defendant must know of facts from which an inference can be drawn that "a substantial risk of serious harm" is posed to an inmate's health or safety, must actually draw that inference, and then disregard the risk posed to the inmate. Farmer, 511 U.S. at 837.

### Discussion

A review of the record and relevant case law reveals the Plaintiff's Rule 56 (d) motion should be denied. The Defendants' summary judgment motion should be granted as to the change in the grievance policy claim, and denied as to the deprivation of recreation/exercise claim.

As discussed *supra*, it appears that the Plaintiff's claim that the changes to the

16

grievance procedure at the SCDC should be dismissed without prejudice. The court cannot reach the claim on the merits here because the Plaintiff filed suit before the PLRA's administrative exhaustion requirement was met. See, 42 U.S.C.A. § 1997e(a). Since the Defendants are entitled to have the claim dismissed without prejudice, the Grievance Coordinator, Defendant Ann Hallman should be dismissed from the action since this claim was directed at her, and she does not appear to be involved in the Plaintiff's other claim.

On the other hand, the Defendants' argument that the Plaintiff's complaint concerning the denial of exercise is unexhausted is unavailing. His relevant Step 2 Grievance was pending unanswered for over one (1) year, rendering the administrative remedy is "unavailable" within the meaning of the PLRA. See, Woodford v. Ngo, 548 U.S. 81, 85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The court should consider that claim on the merits.

The Plaintiff claims that he has not been allowed outdoor recreation/exercise for over one (1) year, that his cell is too small[5] to allow for meaningful in-cell exercise, and that there is no other out-of-cell indoor space available for exercise.

The Defendants have not disputed the Plaintiff's allegation that he has not been allowed outdoor exercise/recreation for over a year's time. It is undisputed that the Defendants knew about the lack of outdoor recreation/exercise, but that they decided that they did not have sufficient staff to insure security to allow outdoor

---

[5] He wrote that he can touch both sides of his cell with his arms outstretched and that his cell contains two (2) beds, a sink, and a toilet. In addition, the ventilation in the small cell is not sufficient to remove the heat and humidity that exercise produces which further aggravates his breathing and sinus problems. (Dkt. 50, pg. 4).

recreation/exercise . In fact, according to Defendant Davis, he has not had sufficient staff to allow secure outdoor recreation/exercise for over two years.

The Defendants further admit that SCDC's own policy calls for the denied recreation/exercise, "Exercise periods outside the cells shall be available five (5) days per week, one (I) hour per day, weather permitting or unless safety and security reasons dictate otherwise." This is evidence from which a reasonable fact finder could conclude that Defendants were deliberately indifferent to the Plaintiff's serious need for recreation/exercise.

The Plaintiff has also produced medical records which illustrate that he complained that his inability to exercise caused or exacerbated his sinusitus, and leg and hip pain and that medical personnel continued to treat these conditions with medications. It appears that the Plaintiff has forecasted evidence of "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381.

A finder of fact must determine whether the denial of outdoor recreation/exercise did, in fact, constitute a constitutional violation of the Plaintiff's Eighth Amendment protections and the Fourth Circuit has held that such determination depends on "the totality of the circumstances." Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir.1992). "[I]n considering the totality of conditions pertinent to the right of exercise at a given institution, elements including the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, ... and the practical opportunities for the institution to provide prisoners with increased exercise opportunities must be considered." Id. (quoting Dawson v. Kendrick, 527 F.Supp. 1252, 1300 (S.D.W.Va.

1981)). Here, the record should be expanded to allow a totality of the circumstances determination as required by Mitchell v. Rice. Id. at 190 ("we remanded the exercise issue 'for development of additional facts ..., particularly whether the plaintiff offered any proof of injury, with an opportunity to both parties to present any additional evidence they may desire.'")

In sum, the Plaintiff has carried his burden to show a genuine dispute of material fact precluding judgment as a matter of law and the Defendants' summary judgment motion on this claim should be denied. In addition, the Defendants' claim of qualified immunity should await development of the record. See Mitchell at 192 (finding that consideration of qualified immunity should await a showing of whether there were unusual circumstances present precluding some out of cell exercise and whether alternatives were infeasible "excepting financial justifications."

Conclusion

Accordingly for the aforementioned reasons, it is recommended that the Plaintiff's complaint concerning the new Grievance Policy be dismissed without prejudice, Defendant Ann Hallman be dismissed from the suit, and Plaintiff's prayer for damages from the Defendants in their official capacities be denied. It is further recommended that the Plaintiff's complaint concerning the denial of recreation/exercise and the Defendants' claim of entitlement to qualified immunity go forward.

IT IS SO RECOMMENDED.

October 9, 2014
Charleston, South Carolina

WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).